DECISION AND JOURNAL ENTRY
Appellants, Viola Jefferson and Ivan Solomon Mitchell, appeal from an order of the Summit County Court of Common Pleas, Juvenile Division, that awarded permanent custody of their four children to the Summit County Children Services Board ("CSB").[1] This Court affirms.
Appellants are the parents of Judith, Sarah, Leah, and Solomon Jefferson. During December of 1998, prior to the birth of Solomon, the three oldest children were removed from the home and placed in the temporary custody of CSB. CSB was initially concerned that the basic needs of the children were not being met. In particular, the children were not being properly fed or adequately supervised and their medical needs were not being addressed appropriately. CSB also expressed concern about Jefferson's substance abuse problem, noting that she had used cocaine during and after her pregnancy with Leah. Addressing Jefferson's substance abuse was the primary goal, particularly after CSB discovered that Jefferson was pregnant with Solomon. Despite several months of CSB involvement with the family, Jefferson made little progress toward remedying these problems. She continued to test positive for cocaine and she did not pursue referrals to community agencies that could have helped her with her financial problems. Throughout this period, Jefferson either told CSB that she did not know where Mitchell lived or that he was living out of state. Apparently, however, Mitchell was living with Jefferson.
On May 21, 1999, CSB filed a motion for permanent custody, alleging, among other things, that Jefferson and Mitchell had failed to substantially remedy the conditions that caused the children to be placed in CSB custody. Jefferson gave birth to Solomon Jefferson on September 29, 1999. He was placed in CSB custody shortly after his birth. Approximately one month before the permanent custody hearing, Mitchell's sister, Tawanda Mitchell, sent a letter to the court requesting that the children be placed with her. One week before the hearing, Appellants moved the trial court to place the children in the custody of Ms. Mitchell. Although the state objected to the magistrate considering Ms. Mitchell's request, contending that it was not timely filed, the magistrate noted that she fully considered the option of placing the children in the legal custody of Ms. Mitchell.
Following a hearing on December 6, 1999, the magistrate decided that CSB should be granted permanent custody of all four children. Appellants filed timely objections to the magistrate's decision. On April 27, 2000, the trial court overruled the objections and adopted the magistrate's decision.
Appellants separately appealed. After Appellants' briefs were filed, this Court consolidated the appeals. Because most of Appellants' assigned errors are identical, except for one error asserted by only Mitchell, the assigned errors will be addressed together and some errors will be consolidated to facilitate discussion.
The first assignment of error is that CSB did not lawfully obtain custody of the youngest child, Solomon, because the trial court relied on improper hearsay evidence at the November 22, 1999 adjudication hearing. Because this hearing was held before a magistrate, the requirements of Juvenile Rule 40 apply. Juv.R. 40(E)(3)(b) provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
Although Appellants assert that they raised this challenge through timely objections, this Court has reviewed the entire record and finds no indication that any such objections were filed. No such document appears in the record, nor is one listed in the transcript of docket and journal entries, nor is there any response in opposition or ruling by the trial court. If Appellants did in fact file objections that were omitted from the record for some reason, they should have sought to supplement or correct the record pursuant to App.R. 9. Loc.R. 5(A) of the Ninth District Court of Appeals provides: "It is the duty of the appellant * * * to ensure that the record filed in the court of appeals actually includes all that is necessary to the appeal."
Because, according to the record before this Court, Appellants failed to preserve this challenge by complying with the requirements of Juv.R. 40(E), they are precluded from raising this challenge on appeal. The first assignment of error is overruled.
Appellants' second and third assignments of error challenge the trial court's failure to grant legal custody of the four children to Tawanda Mitchell, Mitchell's sister. This Court has held that a parent has standing to challenge the trial court's failure to grant a motion for legal custody filed by a relative because the court's denial of that motion led to a grant of permanent custody to the children services agency, which impacted the residual rights of the parent. See In reEvans (Feb. 2, 2000), Summit App. No. 19489, unreported. The parent has standing to challenge only how the court's decision impacted the parent's rights, however, not the rights of the relative. See id. In other words, Appellants have no standing to assert that the court abused its discretion by failing to give the aunt legal custody. Their challenge is limited to whether the court's decision to terminate their parental rights was proper. See id.
Appellants raise two arguments regarding the court's failure to place the children with their aunt: (1) that the trial court had no authority to grant permanent custody to CSB because a suitable relative was available to care for the children and (2) that granting permanent custody to CSB was not in the children's best interests.
Appellants' first argument is based on an incorrect legal premise that if a suitable relative was available, the court was required by statute to pursue placement with the relative before granting permanent custody to CSB. In fact, this Court has held that the trial court is not required to consider placement with a relative before granting permanent custody to CSB. In the Matter of Knight (Mar. 22, 2000), Lorain App. Nos. 98CA007258/98CA007266, unreported. The willingness of a relative to care for the child does not alter the statutory factors to be considered in granting permanent custody. Id., citing In the Matter of Mastin
(Dec. 17, 1997), Lorain App. Nos. 97CA006743/97CA006746, unreported. Therefore, Appellants' second assignment of error is overruled.
Appellants next argue that granting permanent custody to CSB was not in the children's best interests. The court was required to find by clear and convincing evidence that (1) the grant of permanent custody to CSB was in the best interests of the children, based on an analysis under R.C. 2151.414(D), and that (2) the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E). See R.C.2151.414(B)(1); see, also, In re William S. (1996), 75 Ohio St.3d 95,99. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985), 18 Ohio St.3d 361,368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
When determining whether a grant of permanent custody is in the child's best interest, the juvenile court should:
[C]onsider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem [sic], with due regard for the maturity of the child;
(3) The custodial history of the child * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 (5) Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child.
R.C. 2151.414(D)(1)-(5).
The magistrate found that the children had developed a bond with their foster parents, but that they had no real bond with their mother, father, or aunt. The evidence supported that finding. At the time the children were placed in the custody of CSB, they were very young: Judith was two years old, Sarah was sixteen months old, and Leah was only three and a half months old. Solomon, who was born nine months later, was placed in CSB custody shortly after his birth. As the magistrate suggested in her decision, because the children were so young when they were removed from the home, they had spent much of their short lives in CSB custody and regular contact during that year was crucial to developing attachment. Both the CSB caseworker and the guardian adlitem testified that each of the three older children, Judith, Sarah, and Leah, had demonstrated bonding with their foster parents.
During the year that the children were in CSB custody, however, they had limited interaction with their mother, father, and aunt. Throughout the year, Jefferson's attendance at the scheduled weekly visitations was inconsistent. Although she claimed that she missed some visits due to unexplained transportation problems, she admitted that she had missed at least two visits because she had "gotten high." Mitchell attended only one scheduled visitation with the children, without the approval of CSB, and approximately ten to fifteen minutes of a second visit. The aunt, Tawanda Mitchell, did not make any arrangements to visit the children after they were placed in CSB custody until shortly before the hearing and, therefore, had seen the children only once during that year.
The wishes of the children, who were three years old and younger at the time of the hearing, were expressed through the guardian ad litem.
Although Appellants suggest that that the guardian ad litem's testimony supports their position, in fact, the guardian ad litem recommended permanent custody to CSB with a potential adoptive placement with Ms. Mitchell. The guardian ad litem noted that a permanent custody was the best option because Appellants had many problems that had not been resolved and it was unclear "how long it would take for those issues to be resolved and for mom and dad to even consider petitioning the court again for return of the children."
Consequently, considering the evidence going to each of the relevant factors, the trial court did not err in concluding that permanent custody to CSB was in the children's best interests. Appellants' third assignment of error is overruled.
Appellants' fourth and fifth assignments of error are that the trial court's decision to award permanent custody to CSB was against the manifest weight of the evidence and was not supported by sufficient evidence. When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), Summit App. No. 18983, unreported. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of fact [of the trial court]." Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Id. This Court has previously held that a determination that a finding is not contrary to the manifest weight of the evidence will also be dispositive of the issue of sufficiency. See Bowen v. Bowen (1999), 132 Ohio App.3d 616, 638.
Appellants challenge the trial court's finding that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent. In making such a determination, the juvenile court must find by clear and convincing evidence that at least one of the enumerated factors in R.C. 2151.414(E) exists as to each of the child's parents. In re William S., 75 Ohio St.3d at 101. Those factors include:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties[;]
* * *
R.C. 2151.414(E). The juvenile court should consider all relevant evidence when making such a determination. R.C. 2151.414(E). When a juvenile court finds by clear and convincing evidence that one of the enumerated factors in R.C. 2151.414(E) is present, the court must then conclude that the child cannot be placed within a reasonable time or should not be placed with the parent. In re Thorn (Feb. 16, 2000), Summit App. No. 19597, unreported.
The evidence presented at the permanent custody hearing supported the magistrate's conclusion that the children could not, or should not, be placed with either parent within a reasonable time. The evidence demonstrated that each parent had continuously and repeatedly failed to substantially remedy the conditions that had caused the children to be placed outside their home.
The case plan objectives that CSB had set for Jefferson included: (1) providing a stable home environment for the children, including functioning utilities, appropriate furnishings, and food and supplies; (2) maintaining a substance-free lifestyle; and (3) demonstrating appropriate parenting skills, including preparing meals and maintaining the household and the household budget. To accomplish the first two goals, Jefferson was to follow through with financial assistance services and she was to successfully complete a drug treatment program. Although Jefferson would also need to attend parenting classes and work with a homemaker to accomplish the third goal, those services were postponed to allow Jefferson to focus on her more serious problems, particularly her substance abuse.
Jefferson apparently did not even contact any of the financial service agencies that CSB had referred her to. Although she did begin several different drug treatment programs, she failed to successfully complete any of them. Jefferson had enrolled in almost every treatment facility in the county, but had been terminated from every one, primarily due to her continued use of cocaine. At the hearing, Jefferson admitted that she was still using cocaine almost every day. She estimated that her level of addiction was about a nine on a scale of one to ten. Experts opined that, even if Jefferson could successfully complete further drug treatment, the necessary programs would require a minimum of nine months to complete. Moreover, her caseworker testified that, even if Jefferson could conquer her drug problem, CSB still had several other concerns about her ability to parent the children.
Mitchell's case plan focused on him accepting responsibility for his children before reunification would be possible. His case plan had the following objectives: (1) becoming legally responsible for his children by establishing paternity and providing financial and developmental support for the children; and (2) demonstrating that he had no involvement with drugs or alcohol and that he did not have a police record that would impact his ability to care for his children. Mitchell was to accomplish these goals by having a blood test to establish paternity, registering with the child support enforcement agency, having a drug assessment and pursuing any recommended treatment at the community drug board, and he was also to authorize the community drug board to do a police background check.
At the time of the hearing, Mitchell had made little progress toward the goal of accepting responsibility for his children. He had taken no steps toward establishing paternity or paying child support for the children. As noted above, Mitchell had had very little contact with the children during the year that they were in CSB custody. Mitchell had also failed to make substantial progress toward the goal of establishing that he was not involved with drugs or criminal activity that would affect his ability to parent his children. Although Mitchell had contacted the community drug board, he had not yet had a drug screen or authorized a police record check. In fact, the CSB caseworker testified that Mitchell had recently admitted to her that was facing felony drug charges.
Therefore, this Court cannot say that the magistrate, as trier of fact, clearly lost her way in concluding that Appellants had failed continuously and repeatedly to substantially remedy the conditions that had caused the children to be placed outside their home. The fourth and fifth assignments of error are overruled.
Mitchell's sixth assignment of error is that CSB failed to make reasonable efforts to reunify the family. Mitchell did not raise this issue pursuant to a timely objection to the magistrate's decision. See Juv.R. 40(E) and the discussion of Appellants' first assignment of error above. Consequently, he is precluded from raising this challenge on appeal. Mitchell's sixth assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ DONNA J. CARR
SLABY, P. J. WHITMORE, J. CONCUR
[1] Although Jefferson also has a child by another father, that child was not a subject of the permanent custody order.